ELIJAH and ELIZABETH ELLISTON, Executors, etc., *v.* AN-
DREW MORRISON.

## October Term, 1876.

CONTRACT DEPENDENT ON REBUILDING OR SELLING. — Under a contract
between two owners of adjacent lots in a city, by which one, who is about to
rebuild on his lot, undertakes to build a foundation partly on his land and
partly on the land of the other, and wait with the latter for repayment for
the part on his land until he "rebuilds his house and uses said one foot of
said foundation, or until he sells the lot," an action cannot be sustained
by the former, or his personal representatives, against the latter, until he
does actually rebuild or sell; and the extension of the frame house then
standing on the lot, and which was rested on the foundation-wall when
completed, a few feet to the pavement in front, would not be a rebuilding
within the meaning of the contract.

CROSS-BILL BY ANSWER. — An answer filed as a cross-bill, under the statute,
can only be treated as a cross-bill proper, and, being defensive, will go with
the original bill; and the court cannot be required to notice original matter
set up therein, at any rate if the original matter be a cause of action
against the heir, when the original bill is by the personal representative
of a decedent.

*Allison*, for complainants.
*Shackleford*, for defendant.

THE CHANCELLOR: — In the year 1868, William R. Ellis-
ton, the testator of the complainants, and the defendant,
Andrew Morrison, were the owners of adjoining lots front-
ing on the public-square in Nashville, each owning one of
the lots. On the Morrison lot was a frame building, the
other being vacant. In this situation of things, Elliston
and Morrison, on October 27, 1868, entered into an agree-
ment in writing, reciting that, "whereas the said Elliston
is now rebuilding his house" on his lot, it is agreed that
the stone foundation on the line between their lots should
be thirty inches wide, eighteen inches to be on the ground
of Elliston and twelve inches on the ground of Morrison;
that Elliston is to advance the money, and pay for the said
one foot of wall on Morrison's ground, "and wait with him

for repayment until he, the said Morrison, rebuilds his house, and uses said one foot of said foundation, or until he, the said Morrison, sells his lot." The agreement contains an express stipulation binding Morrison, his heirs, etc., to pay Elliston, his heirs, etc., the amount so expended in payment of said one foot of said foundation, "upon the happening of either contingency named," and to secure the said payment, Elliston is to have a lien on Morrison's part of the wall. The agreement further provides that each party is to build separate and distinct brick walls on said foundation, and that the amount to be paid by Morrison for the said one foot of wall "is not to bear interest."

Immediately upon the execution of this agreement, Elliston proceeded to build the foundation-wall and erect his house. In order to build the twelve inches of foundation on Morrison's ground, it became necessary to prop up the frame building on his lot, — which was done, the foundation built, and the props knocked out so as to rest the building on the foundation-wall. Elliston then built his house on the eighteen inches of foundation on his ground, but the wall above the second story, it is proved, bulges out a few inches over Morrison's lot. Morrison's frame building was only two stories high, and did not extend to the pavement by about ten feet. About the time Elliston's building was finished, early in 1869, Morrison built a brick addition in front of his frame building, and of the same height, so as to fill up the space between the building and the pavement, resting the wall on the twelve inches of joint-foundation. On July 4, 1870, William R. Elliston died testate, and the complainants were appointed and qualified as executors of his will. On January 26, 1872, this bill was filed to recover the cost of the twelve inches of foundation-wall on the ground of Morrison, alleging that, on January 1, 1869, Morrison proceeded "to rebuild his house, and has ever since continued to use his said one foot of said foundation."

The defendant answered, denying that he had either built upon the said foundation or sold his lot. He also filed his answer as a cross-bill, stating that the wall of Elliston bulged over his lot several inches, and asked that so much of the brick wall built by the complainants' testator "as encroached upon the lot" of defendant be torn down, and removed out of the space of said lot. The complainants answered the cross-bill, denying the fact upon which the relief rested. The evidence establishes the facts as above detailed.

The agreement expressly providing that Elliston was to wait with Morrison for the repayment, without interest, of the amount sued for, until Morrison "rebuilds his house and uses" the foundation in question, or until he sells his lot, it is clear that no right of action accrued until one of these contingencies occurred. Morrison never having sold the lot, the right is narrowed to the other contingency. The mere use of the foundation is not enough, for the building already on Morrison's lot required to be shored up in order to enable Elliston to build on Morrison's ground, and was expected to rest on the foundation. It would have been idle and unmeaning to provide that the cost of the foundation should not bear interest, if the liability of Morrison necessarily accrued as soon as the expense was incurred, by the fact that the frame building was to rest on it. The liability of Morrison is not to accrue until he not only uses the foundation, but "rebuilds his house;" and the rights of the parties, so far as this branch of the case is concerned, depend upon the construction to be put upon these words. What was meant by this phrase, "rebuilds his house"?

The proof shows that these lots are on the north side of the public-square in Nashville, and very valuable, worth from $500 to $1,000 a foot front, and that the house erected by Elliston was four stories high. Perhaps we are justified from these facts in drawing the inference that the buildings

to be erected were intended for business purposes. The agreement itself recites that Elliston is now "rebuilding his house," and he does erect a four-story building. There is on Morrison's lot a frame building, the precise character and dimensions of which — except that it is two stories high — nowhere appears. But it does appear that it was over the foundation agreed to be built, and afterwards rested on it. The use of the word "rebuilds," under these circumstances, seems fairly to imply that when Morrison removes this structure and "rebuilds" another in its place, then he is to pay for the foundation. The frame building, we may conjecture, was not suited to the location or value of the lot, and a brick building in its place was contemplated. If the proof had shown that the building covered all of the lot except the few feet between its front and the pavement, this would have been self-evident. The stipulation in the agreement, that each of the contracting parties should erect a separate brick wall, leads to the same result. What the parties meant, then, was, when Morrison rebuilds a brick house and uses the foundation, he shall repay the cost of the latter. The provision of the agreement, touching interest, shows that both parties contemplated the contingency of a lapse of time before the one would be expected to pay, or the other receive the outlay. Under these circumstances, no length of time would authorize the bringing of a suit until there was a rebuilding.

It is shown that Morrison did build upon the foundation a brick front to the old building, filling up the space between it and the pavement. No part of the old building seems to have been interfered with, and, consequently, in reference to that old building there has been no rebuilding. But the parties have used the word "rebuilds," and must have contemplated not a mere building, but a building in place of something else. If we could look to evidence outside of the agreement, to ascertain what was to be rebuilt or replaced, there is no evidence in this record to show any thing to which the word can be applied, except the old building.

Until Morrison "rebuilds" where this old building is, there is, so far as we can see, no intention to make him repay the cost of the foundation. Upon the facts as they appear, you must ignore this word, and treat it as used only in the sense of "build," before you can sustain the present action. I am unwilling thus to change or construe away the language used by the parties, and must, consequently, dismiss the bill as prematurely filed.

The answer filed as a cross-bill must, of course, go with the bill. A cross-bill proper is simply defensive, and if the bill is dismissed, the defence necessarily fails also. And although a regular cross-bill might, in some cases, be treated as an original bill, no such favor can be shown to an answer filed as a cross-bill, for it owes its vitality entirely to the statute, which only sanctions the filing of an answer as a cross-bill, not as an original bill. The only matter set up in this answer filed as a cross-bill, which is attempted to be sustained, is the bulging of Elliston's wall over Morrison's lot. But that matter is in no sense defensive. It is an entirely original and independent ground of action, the remedy for which is an action of ejectment at law. The jurisdiction of the court, it is true, may be conceded by the filing of an answer, but the filing of an answer cannot make that defensive which is in its nature original. The court cannot be required to notice original matter set up in an answer filed as a cross-bill. Besides, the object of this part of the cross-bill is to take down the wall so far as it overhangs, and thus to affect the realty. But personal representatives, like the complainants, *primâ facie* have nothing to do with the realty, and it is incumbent upon those who seek to affect the realty through them to show that they have the necessary title and interest. But neither in the cross-bill nor the evidence is there any thing to show such title and interest in this case. The cross-bill must, consequently, be also dismissed.

Both parties have, however, taken testimony upon the matters of the cross-bill, and the costs of the cause will be equally divided between them.